UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DION BERGERON *et al.*,

Plaintiffs,

v.                                                    CAUSE NO. 3:23cv1003 DRL-SJF

LAPORTE COUNTY *et al.*,

Defendants.

OPINION AND ORDER

Allen Stevens, Dion Bergeron, and Debra Fly-Nelson, all former LaPorte County employees, collectively bring thirteen claims against LaPorte County and two county commissioners, Richard Mrozinski and Connie Gramarossa, in their personal capacities. Each former employee alleges constitutional claims for retaliation and conspiracy under the First Amendment and then certain tortious interference and defamation claims against the commissioners (at times one or both).

The defense seeks to dismiss their entirety, primarily under Federal Rule of Civil Procedure 12(b)(6) and then the defamation claim under the anti-SLAPP rubric of Indiana law. *See* Ind. Code. § 34-7-7-5. The court finds that Mr. Bergeron plausibly alleges a federal claim under the First Amendment, permits his tortious interference claim to proceed against Commissioner Gramarossa, dismisses all other federal claims under Rule 12(b)(6), and dismisses for lack of supplemental jurisdiction the state law claims brought by Mr. Stevens and Ms. Fly-Nelson.

A. *First Amendment Retaliation and Conspiracy Claims under 42 U.S.C. § 1983*.

These three former employees allege an array of claims. The court begins with the federal claims as the only hooks to subject matter jurisdiction. Mr. Stevens asserts First Amendment retaliation and conspiracy claims against LaPorte County (counts 1, 2) and Commissioners Mrozinski and Grammarosa in their personal capacities (counts 6, 7). Mr. Bergeron and Ms. Fly-Nelson bring First Amendment retaliation claims against LaPorte County (counts 4, 5) and Commissioner Gramarossa (counts 10, 12).

Section 1983 is a procedural vehicle for lawsuits "vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). To establish a § 1983 claim, plaintiffs must show they were "deprived of a right secured by the Constitution or federal law, by a person acting under color of law." *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006). They allege they were fired in retaliation for exercising their free speech rights.

The First Amendment, as applicable to the States through the Fourteenth Amendment, "prohibits the enactment of laws 'abridging the freedom of speech.'" *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (quoting U.S. Const. amend. I). It "generally prohibits government officials from dismissing or demoting an employee because of the employee's engagement in constitutionally protected political activity." *Heffernan v. City of Paterson*, 578 U.S. 266, 268 (2016); *see also Bless v. Cook Cnty. Sheriff's Off.*, 9 F.4th 565, 571 (7th Cir. 2021). "To make out a *prima facie* claim for a violation of First Amendment rights, public employees must present evidence that (1) their speech was constitutionally protected; (2) they suffered a deprivation likely to deter free speech; and (3) their speech was at least a motivating factor in the employer's actions." *Bless*, 9 F.4th at 571 (citation omitted).

2

For purposes of this part of the motion, the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in a plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It need not plead "detailed factual allegations." *Id.* A claim must be plausible, not probable. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). The parties submitted documents, but the court excludes these to analyze the claims challenged under Rule 12(b)(6).

The Commissioners and LaPorte County argue that this complaint foot-faults by not alleging a plausible basis to say these former employees engaged in constitutionally protected speech or that any such speech motivated their termination. The standard of review isn't to ensure a pleading of elements, so the court only determines whether there is a plausible basis for a First Amendment retaliation or conspiracy claim under the law.

Eventually, "[f]or a public employee's speech to be protected under the First Amendment, the employee must show that (1) he [or she] made the speech as a private citizen, (2) the speech addressed a matter of public concern, and (3) his [or her] interest in expressing that speech was not outweighed by the state's interests as an employer in promoting effective and efficient public service." *Swetlik v. Crawford*, 738 F.3d 818, 825 (7th Cir. 2013) (quotation and citation omitted). A public employee must then articulate a "causal connection . . . showing that the protected activity and the adverse action are not wholly unrelated." *Bless*, 9

F.4th at 572 (quotations, citation, and brackets omitted); *see Daza v. Indiana*, 941 F.3d 303, 309 (7th Cir. 2019) ("a plaintiff must demonstrate a causal connection between the conduct and the employer's action"). This overlaps favorably with a related requirement for § 1983 claims that a complaint plausibly allege the "defendant was personally responsible for the deprivation of a constitutional right." *Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023).

The LaPorte County Board of Commissioners is the executive body for LaPorte County, Indiana. The Board has three members: Commissioners Richard Mrozinski, Connie Gramarossa, and Joe Haney. Allen Stevens, Dion Bergeron, and Debra Fly-Nelson used to be LaPorte County employees. The court address each in turn.

1. *Allen Stevens (Counts 1-2, 6-7).*

The Board appointed Mr. Stevens to be the Highway Superintendent for the LaPorte County Highway Department in January 2023. Commissioner Mrozinski voted against his appointment. In this role, Mr. Stevens oversaw the county's road, bridge, equipment, and facility repair and improvement. He was responsible for 1,100 square miles of county highway, including maintenance, resurfacing, and repair; equipment purchasing and repair; department hiring; and employee discipline. He believed he was well-suited for the job due to his experience owning a paving and asphalt maintenance company and his thirteen years of employment with INDOT. He loyally and successfully performed his duties. Independently, he was also the LaPorte County Republican Party Chairman.

Commissioner Gramarossa realigned during Mr. Stevens's tenure to ally with Commissioner Mrozinski. As alleged, Commissioners Gramarossa and Mrozinski together subjected Mr. Stevens to corrupt and unethical demands. These included demands to hire and

promote family members, prioritize street-paving projects for friends and family, fire perceived political opponents, take on special projects for political allies, use politically-connected vendors, shake down vendors for contributions, and manipulate county paving contracts for political gain. Mr. Stevens says he refused each demand.

At a meeting held April 5, 2023, as alleged, Commissioner Mrozinski publicly and falsely accused Mr. Stevens of overpaying $20,000 for an asphalt reclaimer. The commissioner asked for "a little explanation of what the heck is going on with that" because it didn't "pass the smell test." The meeting was attended by members of the public, both in person and over Zoom. Afterwards, Commissioner Mrozinski filed a report with the LaPorte County Sheriff's Department accusing Mr. Stevens of an alleged kickback scheme with a local vendor. The ensuing investigation cleared Mr. Stevens of wrongdoing.

On June 12, Commissioner Mrozinski met privately with Mr. Stevens and told him he was fired. Two days later, Commissioner Mrozinski said on a local radio broadcast that he and Commissioner Gramarossa decided to fire Mr. Stevens, and that Mr. Stevens "disobey[ed] orders and cost[] the county a lot of money."

At a later board meeting on June 21, Commissioners Mrozinski and Gramarossa voted to fire Mr. Stevens. During the meeting, Commissioner Haney asked Commissioner Mrozinski whether Mr. Stevens had been terminated before the meeting. Commissioner Mrozinski said he couldn't discuss personnel issues during an open meeting, and later claimed Mr. Stevens had been on paid suspension until the board vote.

Mr. Stevens sues LaPorte County for the actions of the two commissioners. He posits that he was exercising his First Amendment rights when he refused the various corrupt and

unethical demands by Commissioners Mrozinski and Gramarossa. The defense argues that Mr. Stevens made any statements within the scope of his employment, pursuant to official duties and not as a private citizen. Mr. Stevens thus pivots to say he associates with Commissioner Haney, a known political opponent of Commissioners Mrozinski and Gramarossa, and that this association merits First Amendment protection to offer a plausible basis for believing that LaPorte County (through Commissioners Mrozinski and Gramarossa) retaliated against him.

"A public employee's statements made pursuant to official duties are not made as a private citizen for the purpose of the First Amendment." *Swetlik*, 738 F.3d at 826 (citing *Garcetti v. Ceballos*, 547 U.S. 410, 421-22 (2006)). "Determining the official duties of a public employee requires a practical inquiry into what duties the employee is expected to perform, and is not limited to the formal job description." *Vose v. Kliment*, 506 F.3d 565, 569 (7th Cir. 2007).

The complaint only describes speech by Mr. Stevens made in the course of his official duties. Mr. Stevens says he was fired for refusing his position as Highway Superintendent to benefit the personal agendas of Commissioners Mrozinski and Gramarossa, such as by hiring their associates and firing their opponents, meting out contracts for their personal or political gains, and prioritizing work to benefit their friends and family. Employment decisions, issuing contracts, and coordinating work are all functions of a Highway Superintendent, as is doing so without engaging in corruption. Performing job duties, and doing so honestly, is part and parcel of such work. Mr. Stevens points to no private speech that would plausibly undergird a First Amendment retaliation claim.

Mr. Stevens alternatively argues his political association—namely, his affiliation with Commissioner Haney. The First Amendment protects the right "to associate for the advancement of political beliefs." *Williams v. Rhodes*, 393 U.S. 23, 30 (1968). The First Amendment forbids government officials from discharging employees based on their political association, unless political affiliation is an appropriate job requirement or the employee holds a job at the policymaking level. *Hanson v. LeVan*, 967 F.3d 584, 588 (7th Cir. 2020) (citing *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 64 (1990)); *Soderbeck v. Burnett Cnty.*, 752 F.2d 285, 288 (7th Cir. 1985).

No one argues Mr. Stevens was hired into a policymaking position (despite being the "lead decisionmaker" with the Highway Department) or a role that necessarily required a certain party affiliation. For his part, Mr. Stevens points to allegations of associative conduct, albeit tenuous at best: that Commissioners Mrozinski and Gramarossa told Mr. Stevens to "reign in" Commissioner Haney (and other elected officials) and that Commissioner Haney later questioned the process of Mr. Stevens's termination [1 ¶ 29, 32]. Whether that might plausibly allege that these two commissioners disagreed at times with this third, nothing plausibly alludes to political rivalry or opposition between Commissioners Mrozinski and Gramarossa and Mr. Stevens—more particularly, that Mr. Stevens's political affiliation with Commissioner Haney was a motivation that resulted in their retaliation.

Instead, and even assuming some reasonable inference could be drawn that Mr. Stevens and Commissioner Haney were political allies, the complaint explicitly alleges that Mr. Stevens was fired for refusing corrupt demands for favoritism, either for family members or political allies of Commissioners Mrozinski and Gramarossa. His claim is premised on the theory that

he was fired as a private citizen speaking on matters of public concern—in short, that he was a standup and honest man who spoke in opposition to these unethical demands and, for that display of character, was fired.

Although the complaint at one point recites the law on political affiliation [1 ¶ 71], nothing factually suggests that Mr. Stevens opposed these unethical demands because he was politically rivaled to the ideas, much less that because of his political association or rivalry (even within the same party), as one motivation, LaPorte County or these two commissioners fired him. The complaint, rather explicitly, says the county (through these two commissioners) terminated him because he exercised free speech and refused to comply with their demands of favoritism, acting as he did out of honest principle—not because of his political affiliations with others [*id.* ¶ 65, 69, 72, 134].

All said, Mr. Stevens has not plausibly alleged a First Amendment retaliation claim against LaPorte County (count 1) or against Commissioners Mrozinski and Gramarossa (count 6), so the court dismisses both counts. Without an underlying constitutional violation, Mr. Stevens cannot pursue his conspiracy claims in counts 2 and 7 as a matter of law. *See Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008); *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000). The court thus dismisses these two counts as well.

## 2. *Debra Fly-Nelson (Counts 5, 12).*

On January 9, 2023, LaPorte County hired Ms. Fly-Nelson as an administrative assistant to serve a four-year term with the new Board of Commissioners. She had two decades of previous experience in similar positions, and she met the reasonable expectations of her position. She handled claims and invoices for the LaPorte County Auditor's Office and

regularly interacted with the Board of Commissioners. She developed a close working relationship with Commissioner Gramarossa. She was invited to visit the commissioner's home several times, and the commissioner took her out for her birthday.

Commissioner Gramarossa confided in Ms. Fly-Nelson that she was collecting information on Mr. Stevens to get him fired. Ms. Fly-Nelson believed the commissioner was upset that Mr. Stevens refused to comply with unethical or politically motivated demands.

After Mr. Stevens was fired on June 12, 2023, Ms. Fly-Nelson asked Commissioner Gramarossa whether his termination was proper, given that it occurred in a private meeting without Commissioner Haney. Commissioner Gramarossa asked if Ms. Fly-Nelson would remain loyal to her. Ms. Fly-Nelson responded that she planned to do her job and be honest. As alleged, Ms. Fly-Nelson later learned loyalty to the commissioner meant doing whatever the commissioner expected of her, regardless of its propriety or lawfulness.

Commissioner Gramarossa's behavior toward Ms. Fly-Nelson subsequently changed: she subjected Ms. Fly-Nelson to heightened job scrutiny. The complaint never explains how Ms. Fly-Nelson was subjected to heightened scrutiny, but it alleges that Commissioner Gramarossa was looking for some pretext to terminate her. Seven months after her hire date, namely August 11, 2023, Commissioner Gramarossa fired Ms. Fly-Nelson, telling her she failed to meet expectations of the position.

Ms. Fly-Nelson asserts a First Amendment retaliation claim against LaPorte County because she spoke as a private citizen on matters of public concern when she refused to pledge her unconditional support to Commissioner Gramarossa. But the complaint identifies only speech by a public employee, not as a private citizen, when Ms. Fly-Nelson inquired about Mr.

Stevens's termination and otherwise pledged to do an honest job. *See Swetlik*, 738 F.3d at 825. This nonprivate speech cannot sustain a First Amendment retaliation claim as a matter of law.

Nor does the complaint permit the inference that LaPorte County (through Commissioner Gramarossa) terminated Ms. Fly-Nelson because of some unidentified political affiliation. The only plausible inference on the basis of those facts alleged in this complaint is that Commissioner Gramarossa terminated Ms. Fly-Nelson because she would not be loyal in supporting the termination of Mr. Stevens, regardless of political associations. In other words, nothing plausibly suggests that LaPorte County was motivated by Ms. Fly-Nelson's political party affiliation to fire her. The court must dismiss her First Amendment retaliation claims (counts 5 and 12).

3. *Dion Bergeron (Counts 4, 10).*

On May 8, 2023, Mr. Stevens hired Mr. Bergeron as a full-time seasonal mower for the LaPorte County Highway Department. He mowed county property along roadways. During the interview process, Mr. Bergeron was told that if his mower broke, he would go on location with other mowers or tree removal and bridge maintenance crews to provide other necessary services. County employees were satisfied with his performance and attitude, and he was regularly commended for his work ethic and quick response times.

Mr. Bergeron engaged in speech critical of Commissioner Gramarossa, though it seems they shared the same political party. His wife ran against and lost to Commissioner Gramarossa in the 2022 LaPorte County primary election. On May 3, 2023, Mr. Bergeron publicly commented on a Facebook article that mentioned that Commissioner Gramarossa drove a county-owned vehicle in Chicago without permission. On May 4, Mr. Bergeron's wife

likewise voiced opposition to Commissioner Gramarossa's conduct at a LaPorte County Republican Party Precinct meeting. On May 13, Mr. Bergeron shared a Facebook post by Commissioner Haney addressing the same incident. And on June 10, Mr. Bergeron and his wife criticized the Board of Commissioners at a Republican club.

As alleged, Commissioner Gramarossa was aware of their speech and associative activity and was motivated accordingly to retaliate against Mr. Bergeron. Commissioner Gramarossa asked Mr. Stevens, while he was Highway Superintendent, to fire Mr. Bergeron because of his speech and political affiliation, but Mr. Stevens declined. Instead, on June 15, Andrew Simmermeyer (who also worked for the Highway Department) fired Mr. Bergeron, saying he was no longer needed because his mower was broken and would take a long time to get fixed. Mr. Bergeron told Mr. Simmermeyer he believed he was being fired as an act of political retaliation by Commissioner Gramarossa. After all, another employee was caught sleeping in his tractor and not fulfilling his daily mowing duties but was not fired.

Mr. Bergeron asserts a First Amendment retaliation claim against LaPorte County for his criticism of the Board of Commissioners on Facebook and at a political meeting. LaPorte County challenges whether his association with his wife qualifies as constitutionally covered speech. The county argues that his spousal relationship isn't primarily political and thus can't support a First Amendment retaliation claim. *See Klug v. Chi. Sch. Reform Bd. of Trs.*, 197 F.3d 853, 858-59 (7th Cir. 1999); *see also Montgomery v. Stefaniak*, 410 F.3d 933, 937 (7th Cir. 2005).[1]

---

[1] The parties only address the freedom of expressive association under the First Amendment, not the freedom of intimate association (which would trigger a different analysis), so the court follows suit. *See Montgomery*, 410 F.3d at 938 (citing *Zablocki v. Redhail*, 434 U.S. 374, 383-87 (1978)).

The parties debate whether his complaint plausibly alleges that he spoke as a private citizen on a matter of public concern. *See Swetlik*, 738 F.3d at 825. Whether speech addresses a matter of public concern depends on "the content, form, and context of [the speech] as revealed by the whole record." *Gustafson v. Jones*, 290 F.3d 895, 906-07 (7th Cir. 2002) (quoting *Connick v. Myers*, 461 U.S. 138, 147-48 (1983)). Speech is a matter of public concern if it relates to a matter of political, social, or other concern to the community, rather than merely a personal grievance of interest only to the employee. *Connick*, 461 U.S. at 146. The "public concern element is lacking as a matter of law if speech concerns a subject of public interest but the expression addresses only the personal effect upon the employee[.]" *Klug*, 197 F.3d at 858 (quotations and citation omitted); *see also Bivens v. Trent,* 591 F.3d 555, 561 (7th Cir. 2010).

To determine whether this dissonance exists, the court must "evaluate whether the employee is speaking (or associating to promote an idea) more like a citizen or a disgruntled employee." *Klug*, 197 F.3d at 858. In *Klug*, for instance, a teacher claimed that she experienced retaliation for associating with administrators who complained about certain events at school. *Id.* at 855-57. Though the teacher's complaint touched generally on public matters of educational improvement and fiscal responsibility, her association with those administrators wasn't constitutionally protected because it was predominantly connected to "petty office politics"—shoulder bumps, slashed car tires, hurtful anonymous notes, and the like. *Id.*; *see also Cliff v. Bd. of Sch. Comm'rs of City of Indianapolis*, 42 F.3d 403, 410 (7th Cir. 1994) (though employee addressed widespread issues of large classes and general disorder in public high school, her expression concerned only her inability to control her students); *Smith v. Fruin*, 28

F.3d 646, 651-52 (7th Cir. 1994) (public employee's complaint about second-hand smoke in the workplace concerned his interests, albeit being on a subject of public debate).

The presence of a personal relationship alone won't doom First Amendment protection of an association. "A personal aspect contained within the motive of the speaker does not necessarily remove the speech from the scope of public concern." *Marshall v. Porter Cnty. Plan Comm'n*, 32 F.3d 1215, 1219 (7th Cir. 1994). "[A] plaintiff's speech could be characterized as a matter of public concern even if the speaker stands to gain a personal benefit in addition to bringing the wrongdoing to light." *Id.* Ultimately, the test of public concern is objective. *See Auriemma v. Rice*, 910 F.2d 1449, 1460 (7th Cir. 1990) (*en banc*).

As this complaint plausibly conveys, Mr. Bergeron spoke privately as a citizen. His wife's activity aside, his commentary or sharing of another post on Facebook, or his remarks at a GOP meeting, had nothing to do with his job as a mower with the Highway Department. His speech bore on a subject of public import—the proper use or stewardship of county property. And, at this stage of the pleadings, the content and context of his expression weren't conceivably for personal reasons, grievances, or benefits of interest only to him as an employee. His duties or day-to-day status as a mower would be unaffected by Commissioner Gramarossa's alleged misuse of a county car, or any criticism of or correction to it. The court need not trace the alternative theory of spousal speech and association (or same party affiliation) to deny the motion to dismiss at this step of the analysis, for a Rule 12(b)(6) motion doesn't permit piecemeal dismissal of parts of claims. *See Bilek v. Fed. Ins.*, 8 F.4th 581, 587 (7th Cir. 2021); *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015).

LaPorte County, without argument at this stage as to liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978), alternatively argues that Mr. Bergeron's First Amendment retaliation claim stumbles because nothing plausibly suggests a "causal connection" between his expressive or associative activity and his firing, *Bless*, 9 F.4th at 572. The complaint never alleges that any commissioner directed Mr. Simmermeyer (after Mr. Stevens refused) to fire Mr. Bergeron, so LaPorte County contends that calling his protected activity a motivating factor of his firing would be speculative at best.

Mr. Bergeron argues suspicious timing to sustain his pleading. "If the defendant was aware of the conduct," and Mr. Bergeron alleges the county was, "a causal connection can then be demonstrated by suspicious timing alone only when the employer's action follows on the close heels of protected expression." *Daza*, 941 F.3d at 309. This analysis is context-specific but typically requires the employer's action to have occurred no more than a few days after the protected activity. *Id.*; *see also Lalvani v. Cook Cnty.*, 269 F.3d 785, 790 (7th Cir. 2001) ("As the time separating the protected conduct and the adverse employment action grows, the causal inference weakens and eventually time becomes the plaintiff's enemy.").

The complaint explicitly alleges Mr. Bergeron's series of private comments on the public matter of Commissioner Gramarossa's alleged misuse of county property through May 13, 2023, and then Mr. Bergeron's firing in June 15, 2023. In between sit two other events. First, Mr. Bergeron alleges that he and his wife criticized the Board of Commissioners at a GOP meeting on June 10. The complaint never says precisely what these comments were, but in sequence it can fairly be inferred that these comments, critical as they were, included the ongoing reproach of this misuse of county property even if they addressed other matters too.

Discovery may not bear this out, but it would not be the first time political actors clung to a diatribe about an opponent beyond just a few weeks. Second, Mr. Bergeron alleges that Commissioner Gramarossa told Mr. Stevens to fire him because of his criticisms, and once more it seems within the five days between the last June 10 remarks and June 15 termination. Together these allegations frame a timing of events that is suspicious enough that, for pleading purposes alone, they sketch a First Amendment retaliation claim. Accordingly, the court denies the motion to dismiss count 4.

Though this claim survives against LaPorte County, Commissioner Gramarossa challenges whether Mr. Bergeron has a retaliation claim against her. Mr. Bergeron may bring a § 1983 claim only against those individuals "personally responsible for the constitutional deprivation." *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 614 (7th Cir. 2002). No matter the allegation that Commissioner Gramarossa directed Mr. Stevens to fire Mr. Bergeron, Mr. Stevens never did so. Instead, the complaint alleges that Mr. Simmermeyer terminated Mr. Bergeron, and Commissioner Gramarossa says there is no allegation that she was involved in Mr. Simmermeyer's decision. In fairness, that link is thinly inferential until one reads the additional allegations in counts 10 and 11 that say Commissioner Gramarossa terminated his employment or ultimately caused his wrongful termination [1 ¶ 156, 164]. Should discovery show otherwise, there might be cause for summary judgment, but the court cannot dismiss this claim on the basis of the pleading. The court thus denies the motion to dismiss count 10.

B.  *Supplemental Jurisdiction over State Claims.*

The court pauses at this point to address a jurisdictional issue. Only Mr. Bergeron has a federal claim that can survive. From here, only state law claims remain subject to the motion

to dismiss. Putting aside for the moment the issue of severance (a misjoinder of parties), *see* Fed. R. Civ. P. 20, 21, the court has an independent obligation to assess its Article III jurisdiction and the discretionary ability to decline supplemental jurisdiction. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (federal court "may (or may not) choose to exercise" supplemental jurisdiction); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right").

Section 1367(a) authorizes the court to exercise jurisdiction to the full extent of Article III's "case or controversy" requirement. *See McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 682 (7th Cir. 2014). Because original jurisdiction here stems from a federal question, the court has supplemental jurisdiction over state claims "so related" to the federal claim "that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); *see Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 31 (2025).

"Article III confers federal jurisdiction over cases or controversies rather than over claims." *Brazinski v. Amoco Petrol. Additives Co.*, 6 F.3d 1176, 1181-82 (7th Cir. 1993). Claims form part of the same case or controversy when they share "a common nucleus of operative fact." *Royal Canin*, 604 U.S. at 31; *see Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (same); *Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir. 1995) (§ 1367 ratified *Gibbs*). "A loose factual connection is generally sufficient." *Houskins*, 549 F.3d at 495. Just how loose that connection may be remains the subject of case-by-case analysis, *see Prolite Bldg. Supply, LLC v. MW Mfrs., Inc.*, 891 F.3d 256, 258 (7th Cir. 2018), and at times the analysis may prove painstaking to meet the case's complexity, *see, e.g., McCoy*, 760 F.3d at 679-84.

Here, supplemental jurisdiction requires a state law claim be sufficiently connected to Mr. Bergeron's federal claim that LaPorte County or Commissioner Gramarossa retaliated against him for exercising his First Amendment rights. None are, except Mr. Bergeron's tortious interference claim relating to his employment with the county.

As a threshold matter, this seems too high a hurdle for Ms. Fly-Nelson and Mr. Stevens, as neither share in Mr. Bergeron's federal claim. Looking more to the facts, Ms. Fly-Nelson's tortious interference claim doesn't overlap with Mr. Bergeron's speech or any retaliation against him. Rather, she says Commissioner Gramarossa fired her, or interfered with her employment with the county, after she questioned whether Mr. Stevens's discharge followed proper procedure and said she planned to do her job. There is no common nucleus of operative fact with the only remaining federal claims asserted by Mr. Bergeron, so the court dismisses her state law claim (count 13) for lack of supplemental jurisdiction.

Nor is there supplemental jurisdiction over Mr. Stevens's claims. His defamation allegations concern Commissioner Mrozinski's statements in a radio broadcast and at a public hearing, not Mr. Bergeron's speech or discharge. Mr. Bergeron also alleges that he was fired only after Mr. Stevens declined to terminate him. Even if the complaint could be construed as alleging that Mr. Stevens's employment relationship with the county was terminated (or tortiously interrupted) in part for refusing to fire Mr. Bergeron, such a connection to the only remaining federal claims here isn't just loose, but threadbare. It has nothing to do with Mr. Bergeron's protected statements or his association with his wife; they were not fired for the same conduct; and, while Mr. Stevens accuses Commissioners Mrozinski and Gramarossa of interference, Mr. Bergeron accuses Commissioner Gramarossa alone. No common nucleus of

operative facts exists to sustain supplemental jurisdiction over Mr. Stevens's defamation or tortious interference claims, so the court dismisses them (counts 3 and 9) accordingly.

C. *Mr. Bergeron's Tortious Interference with an Employment Relationship Claim (Count 11).*

Mr. Bergeron sues Commissioner Gramarossa alone for tortiously interfering with his employment relationship with LaPorte County. Eventually to prove a claim, though for now the case remains at the pleading stage, he must show (1) the existence of a valid and enforceable contract, (2) the defendant's knowledge of the contract's existence, (3) defendant's intentional inducement of its breach, (4) the absence of justification, and (5) damages resulting from the defendant's wrongful inducement of its breach. *SWL, L.L.C. v. NextGear Cap., Inc.*, 131 N.E.3d 746, 757 (Ind. Ct. App. 2019); *Melton v. Ousley*, 925 N.E.2d 430, 440 (Ind. Ct. App. 2010). The tort also requires "some independent illegal action." *Diamond Quality, Inc. v. Dana Light Axle Prods., LLC*, 256 N.E.3d 529, 533 (Ind. 2025); *Brazauskas v. Fort Wayne-South Bend Diocese, Inc.*, 796 N.E.2d 286, 291 (Ind. 2003). This claim can be maintained for an at-will employment contract. *Melton*, 925 N.E.2d at 440.

Commissioner Gramarossa argues two points: (1) that Mr. Bergeron has not pleaded around the individual tort immunity conferred by the Indiana Tort Claims Act (ITCA) for a governmental actor, and (2) that she, acting for the county in allegedly firing Mr. Bergeron (or causing it), could not be said to have interfered with the county's employment relationship when she is not a third-party but the decisionmaker acting for the county (in short, a party can breach but not interfere with its own contract).

Mr. Bergeron pursues this state law claim against Commissioner Gramarossa in her individual capacity. County commissioners enjoy tort immunity under the ITCA, save specific

circumstances. *See* Ind. Code § 34-13-3-5. To sue a governmental employee personally, a plaintiff must "allege that an act or omission of the employee that causes a loss is: (1) criminal; (2) clearly outside the scope of the employee's employment; (3) malicious; (4) willful and wanton; or (5) calculated to benefit the employee personally." Ind. Code § 34-13-3-5(c). "Under the [ITCA], there is no remedy against the individual [when] he was acting within the scope of his employment." *Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014); *see also* Ind. Code § 34-13-3-5(b) ("A lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally.").

Merely using the word "malicious" or "wanton" isn't enough. The complaint "must contain a reasonable factual basis supporting the allegations." Ind. Code § 34-13-3-5(c); *see also Iqbal*, 556 U.S. at 678. The ITCA's purpose is to "ensure that public employees can exercise their independent judgment necessary to carry out their duties without threat of harassment by litigation or threats of litigation over decisions made within the scope of their employment." *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 452 (Ind. 2000). "Because the ITCA is in derogation of the common law, [courts] construe it narrowly against the grant of immunity." *Mangold v. Ind. Dep't of Nat. Res.*, 756 N.E.2d 970, 975 (Ind. 2001). "The party seeking immunity bears the burden of establishing its conduct comes within the Act." *King v. Ne. Sec., Inc.*, 790 N.E.2d 474, 480 (Ind. 2003).

The complaint describes strained relations between Mr. Bergeron and Commissioner Gramarossa. He alleges that the commissioner interfered with his employment relationship with the county in furtherance of her personal political agenda and outside the scope of her official duties. He also alleges that the commissioner acted maliciously and willfully in

terminating him. Putting a pin in whether the complaint plausibly alleges actions outside a commissioner's duties, the motivation or state of mind alleged—that she acted maliciously or willfully—isn't merely conclusory when the complaint describes a campaign, through corrupt or unethical demands, to prioritize projects and benefits for family members and political allies, and then, in the case of Mr. Bergeron, fired him because of some intra-party rift.

In the alternative, Commissioner Gramarossa argues that Mr. Bergeron fails to plead a plausible tortious interference claim—namely, because she may make hiring and firing decisions as part of her duties and, no matter her motivations, she acts for LaPorte County in making such decisions. In short, she, identified with the county as its decisionmaker, cannot interfere with this business relationship as a matter of law.

Indiana courts have rejected tortious interference claims by fired employees against officers, directors, or managers of employers who participate in their termination. *Vorgias v. Mem'l Health Sys., Inc.*, 2012 U.S. Dist. LEXIS 168422, 21 (N.D. Ind. Nov. 27, 2012) (citing cases). A party can't interfere with its own contract, so the tort can only be committed by a third-party. *Trail v. Boys & Girls Clubs of Nw. Ind.*, 845 N.E.2d 130, 138 (Ind. 2006). When an officer or director of an entity acts in her official capacity as a representative or agent, she acts as the entity, not as a third-party, and cannot be liable for tortious interference. *See id.* However, when she acts outside the scope of her official capacity, she no longer acts as a representative and instead as a third-party who can be held liable for this tort. *Id.*

That is the operative distinction, and the officer's personal motives don't take her actions outside the scope of her employment. *Id.* at 140 (citing *Martin v. Platt*, 386 N.E.2d 1026 (1979); *Leslie v. St. Vincent New Hope, Inc.*, 873 F. Supp. 1250 (S.D. Ind. 1995)). If the officer

has the authority to fire the employee, the officer's personal motivations won't affect whether her actions are within the scope of her duties, even when she acts willfully, wantonly, or maliciously. *See Platt*, 386 N.E.2d at 1027 (no tortious interference claim when officers "intentionally and maliciously" discharged employee because within their duties).

Mr. Bergeron alleges Commissioner Gramarossa acted in furtherance of her personal political affiliations and outside the scope of her official duties when firing him [1 ¶ 164]. The question is whether she had that authority by law.

Mr. Bergeron recognizes that the LaPorte County Board of Commissioners holds robust authority to exercise executive and administrative powers held by the county. *See* Ind. Code §§ 36-2-3.5-3, 36-2-3.5-4. This includes at least some power to make employment decisions. *See* Ind. Code. § 36-2-2-13 ("The executive may employ a person" under certain conditions). For instance, the Board can make employment decisions concerning a subordinate of a county "officer" either with express authorization or if the Board finds the position is "necessary to the public interest." *See* Ind. Code § 36-2-2-13; *Loc. 1963 of United Auto., Aerospace, Agric. Implement Workers of Am., UAW v. Madison Cnty.*, 999 N.E.2d 949, 956-57 (Ind. Ct. App. 2013) (discussing board's authority to hire an officer's deputy).

Mr. Bergeron was a seasonal mower for the LaPorte County Highway Department, and the Highway Superintendent appears to be a county officer, *see* Ind. Code §§ 8-17-3-1, 36-2-2-13(a). Neither party suggests Mr. Bergeron's role was statutorily authorized or found necessary to the public interest to authorize the Board's decisionmaking, but the allegation here concerns only one commissioner's decision or conduct—that she "ultimately caus[ed] Bergeron's wrongful termination" [1 ¶ 164]. The court cannot say at this pleading stage, and

given the allegations of the complaint, that as a matter of law Commissioner Gramarossa individually had the authority to terminate Mr. Bergeron. As such, she could plausibly be considered at this early stage a third-party actor for a tortious interference claim. The court denies the motion to dismiss this claim accordingly.

## CONCLUSION

Accordingly, the court GRANTS IN PART and DENIES IN PART the motion to dismiss [33], DISMISSES counts 1, 2, 5, 6, 7, and 12 under Rule 12(b)(6) for failure to state a claim, DISMISSES counts 3, 8, 9, and 13 for lack of supplemental jurisdiction, and DENIES AS MOOT the motion for a hearing [39]. Mr. Bergeron may proceed with count 4 against LaPorte County and counts 10 and 11 against Commissioner Gramarossa.

SO ORDERED.

June 18, 2025                                    _s/ Damon R. Leichty_
                                                Judge, United States District Court